UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10005-GAO

RACHEL A. HANSON, an individual, and J.M. HANSON, a minor, by her next friend and guardian, Rachel A. Hanson,
Plaintiffs,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,
Defendant.

OPINION AND ORDER
August 10, 2010

O'TOOLE, D.J.

This Social Security appeal concerns whether a child born from a frozen embryo created by a married couple before the husband's accidental death but implanted in the wife after the husband's death is entitled to child's insurance benefits.

The plaintiffs, Rachel and J.M. Hanson, filed an application for Social Security Mother's Insurance Benefits and an application for Social Security Child's Insurance Benefits on April 14, 2003. (Administrative Tr. at 34-39 [hereinafter R.].) Those applications were denied by initial determination on May 24, 2006, (id. at 46-47), and again denied by reconsideration determination on July 19, 2006, (id. at 50-52). Rachel timely filed a request for a hearing before an administrative law judge ("ALJ"). (Id. at 53.) After an evidentiary hearing on March 26 and June 7, 2007, the ALJ granted the applied-for benefits to Rachel and her daughter in a decision dated April 21, 2008. (Id. at 15-27.) Eighty-seven days after the ALJ's decision, the Social Security Administration Appeals Council ("Appeals Council") reopened the case and reversed the ALJ's decision. (Id. at 3-14.) Rachel timely appealed to this Court.

The parties jointly moved to bifurcate the two issues presented by the appeal. The first is whether the Appeals Council exceeded its authority by reopening the case; the second is the substantive question whether the plaintiffs are entitled to benefits. The first issue is the only one presently before the Court.

## I. Factual Background

The plaintiff's husband, Joshua Hanson, died unexpectedly in a motor vehicle accident on November 22, 2001. (Id. at 54.) In the two years prior to Joshua's death, he and Rachel had attempted to have a child through *in vitro* fertilization ("IVF"), using Joshua's sperm and a donated third-party egg. (Id. at 73.) Joshua and Rachel indicated in writing that in the event of Joshua's death, any frozen embryos were to be "[o]wned and controlled" by Rachel. (Id. at 59.) This decision was made in lieu of an option to have the embryos discarded. (Id.) There were several failed implantations, and the last scheduled implantation cycle was interrupted by Joshua's sudden death. (Id. at 73.) The rescheduled implantation took place about three months later, (id. at 61), and resulted in the birth of J.M., approximately forty-nine weeks after Joshua's death, (id. at 56).

In April 2003, Rachel filed a complaint in the Massachusetts Probate and Family Court ("Probate Court") seeking a declaratory judgment naming Joshua as J.M.'s biological father.[1] (Id. at 40-42.) In June 2003, the Probate Court determined that Joshua was the biological father of J.M. and that he intended to be the father of a child born from an embryo containing his sperm. The court ordered that Joshua's name be added to the birth certificate indicating his paternity of J.M. (Id. at 68.)

[1] Under Massachusetts law, a child is only presumed to be the issue of the decedent if born before or within 300 days of the termination of the marriage by death. See Mass. Gen. Laws ch. 209C, § 6. Because J.M. was born after the 300-day period following Joshua's death, Joshua's name did not originally appear on her birth certificate.

## II. Proceedings Before the ALJ and Appeals Council

The ALJ properly identified Massachusetts state law as the source of the applicable legal standard for determining if an applicant is the child of a deceased insured. See 42 U.S.C. § 416(h)(2)(A). The ALJ also correctly identified Woodward v. Comm'r of Soc. Sec., 760 N.E.2d 257 (Mass. 2002), as the authoritative relevant decision of the Massachusetts Supreme Judicial Court ("SJC") on the subject. (R. at 21) In that case, the SJC held:

> [W]e conclude that limited circumstances may exist, consistent with the mandates of our Legislature, in which posthumously conceived children may enjoy the inheritance rights of "issue" under our intestacy law. These limited circumstances exist where, as a threshold matter, the surviving parent or the child's other legal representative demonstrates a genetic relationship between the child and the decedent. The survivor or representative must then establish both that the decedent affirmatively consented to posthumous conception and to the support of any resulting child.

(Woodward, 760 N.E.2d at 272).)

Although the Probate Court had previously determined that Joshua intended to be the father of any children posthumously born from the frozen embryos containing his sperm, there was some question whether this finding was sufficient to satisfy Woodward's requirement of a finding that he had "affirmatively consented . . . to the support of any resulting child." Id. Accordingly, while the ALJ held the matter open, Rachel filed a motion in the Probate Court to amend the previous declaratory judgment by making specific further findings on that issue. (Id. at 81-82.) She notified the Social Security Administration of the scheduled hearing on the Probate Court motion, but the Administration's regional counsel indicated that "the federal government will not be appearing at the hearing, and, as such, we have no objection to a decision being made on the papers." (Id. at 80.) The Probate Court granted Rachel's motion and issued an "Amended Declaratory Judgment" in which it added to the earlier judgment a declaration that Joshua "intended to provide parental support for the child born to his widow, Rachel Hanson,

from the embryo containing his sperm, according to the standards set forth in Woodward . . . ." (Id. at 87.)

The ALJ relied on the ruling of the Probate Court in deciding that because J.M. was Joshua's child under Massachusetts law and the Woodward standard had been met, Rachel and J.M. were entitled to survivor benefits.

The Appeals Council reopened the matter and reversed the ALJ's grant of benefits on its finding that the Probate Court's amended judgment was not binding on the Commissioner. The Appeals Council concluded that J.M. "would not have inheritance rights in [Joshua's] estate under the laws of the Commonwealth of Massachusetts" and that accordingly J.M "is not the child of [Joshua] within the meaning of the Social Security Act." (Id. 13-14.)

**III. Discussion**

There are only four circumstances in which the Appeals Council may *sua sponte* reopen an ALJ's decision. The Appeals Council may initiate review of an ALJ's decision for any reason either within sixty days of the decision, 20 C.F.R. § 404.969, or within twelve months of the date of notice of the initial agency determination, id. § 404.988(a). Further, a decision can be reopened at any time for certain specific reasons enumerated in the regulations, such as fraud. Id. § 404.988(c). Finally, the Appeals Council can reopen an ALJ's decision within four years of the notice of the initial determination if there is "good cause." Id. § 404.988(b). "Good cause" exists in one of three circumstances: where new and material evidence is furnished, where there has been a clerical error in the computation or recomputation of benefits, or where the evidence considered in making the decision clearly shows on its face that an error was made. Id. § 404.989(a)(1)-(3).

Here, it is undisputed that the Appeals Council's notice of the decision to reopen the case was issued more than sixty days after the ALJ's decision and more than twelve months after the initial determination, so the liberal authority to reopen "for any reason" is inapplicable. Since it occurred less than four years after the initial determination, the reopening could be justified by "good cause" under §§ 404.988(b) and 404.989(a).

The Appeals Council claims to have had good cause to reopen the ALJ's decision on the ground that the decision was predicated on an error of law, namely, that the ALJ had erroneously thought himself bound by the decision of the Probate Court in concluding that J.M. should be considered Joshua's child whom he intended to support. This error, the Appeals Court thought, fell within the description of "good cause" found in § 404.989(a)(3): "The evidence that was considered in making the determination or decision clearly shows on its face that an error was made." The error, according to the Appeals Council, was that the ALJ was not required to accept the Probate Court's findings in a proceeding to which the Administration was not a party because the issue was not genuinely contested by parties with opposing interests and because the holding of the Probate Court was inconsistent with the law as enunciated by the SJC. See SSR 83-37c, 1983 WL 31272, at *3 (1983) (incorporating Gray v. Richardson, 474 F.2d 1370 (6th Cir. 1973)).[2]

[2] In Gray v. Richardson, the Administration denied survivor benefits to a divorcee's child who was apparently conceived before the legal dissolution of the marriage. 474 F.2d at 1372. During the divorce proceedings, the state court had ruled that the child was the issue of the decedent, despite evidence that the decedent had undergone a vasectomy and denied any sexual relations during the relevant timeframe. Id. at 1371-72. The Administration declined to adopt the state court decision and denied benefits to the applicant, and the district court upheld the Administration's decision. Id. at 1372. The Sixth Circuit Court of Appeals reversed, stating that "[a]lthough the record contains substantial evidence supporting the findings of the Secretary, we hold that . . . the Secretary should have followed the holding of the State court." Id.

SSR 83-37c states:

> [A]lthough the Secretary is not bound by the decision of a State trial court in a proceeding to which he was not a party, he is not free to ignore an adjudication of a State trial court where the following prerequisites are found: (1) an issue in a claim for Social Security benefits previously has been determined by a State court of competent jurisdiction; (2) this issue was genuinely contested before the State court by parties with opposing interests; (3) the issue falls within the general category of domestic relations law; and (4) the resolution by the State trial court is consistent with the law enunciated by the highest court in the State.

Id.

There are two elements of this test that the Commissioner now asserts were not met. They were, first, that whether Joshua had "affirmatively consented" to support any child born posthumously was not "genuinely contested before the State court by parties with opposing interests," and second, that the decision of the Probate Court is not consistent with Massachusetts law as enunciated by the SJC in Woodward.

The argument that the SSR 83-37c conditions were not met is a weak one. There is no dispute that the proceedings in the Probate Court were uncontested. However, the Commissioner was notified of those proceedings and invited to participate, but he declined, stating that "the federal government will not be appearing at the hearing, and, as such, we have no objection to a decision being made on the papers." (R. at 80.) The "papers," of course, it was well known to the Commissioner, were uncontested. Its decision to stay away in this circumstance was tantamount to an acquiescence in the uncontested nature of the proceedings. Having chosen not to appear and contest Rachel's motion, it is disingenuous for the Commissioner now to complain that there was no contest.

The Commissioner also overstates his case in claiming that the Probate Court's decision was inconsistent with the law as enunciated by the SJC. The standard put forth in Woodward is that the burden is on the surviving parent "to demonstrate the genetic relationship of the child to

the decedent and that the intestate consented both to reproduce posthumously and to support any resulting child." 760 N.E.2d at 270. The Probate Court found this standard satisfied. It specifically found, on the evidence submitted, that Joshua "not only consented to becoming a parent but also that he took affirmative steps to provide for the support of any child born of an embryo that belonged to him and his wife." (R. 85.) The Appeals Council's assertion that "[t]here was *no evidence* that the deceased wage earner clearly and unequivocally consented to the support of any resulting child," (id. at 13 (emphasis added)), is plainly overstated. The Probate Court had affidavits supporting the findings from Rachel and several others. The ALJ heard testimony from some of those same witnesses. The sufficiency and persuasiveness of the evidence is another matter, but to say that there was "no evidence" supporting the findings is clearly wrong.[3]

In any event, the Commissioner makes SRR 83-37c into more than it is. What it says is that when its four enumerated conditions are met, the Commissioner "is not free to ignore an adjudication of a State trial court." SSR 83-37c, at *3. That is, under those conditions, the state adjudication must be respected. The ruling does not say that the Commissioner may not follow a state adjudication *unless* the four conditions are met. It would not be inconsistent with the ruling for the Commissioner to follow a state adjudication even though fewer than all the conditions were met, subject to bounds of reason and good faith. Indeed, as the Sixth Circuit said in the case that was the basis for SRR 83-37c, in "a situation falling within the general category of domestic relations, special deference should be given by federal tribunals to the resolution by the State court. Traditionally the states, not the federal government, have been considered the exclusive

[3] Indeed, in Woodward, the ALJ accepted similar evidence, and the Appeals Council upheld the decision to grant benefits based on that evidence. See Def.'s Further Status Report at 7, Woodward v. Barnhart, No. 00-cv-10124-RWZ (D. Mass. June 16, 2002), ECF No. 20.

arbiter of these problems." Gray, 474 F.2d at 1373. The Appeals Council's characterization of the ALJ's decision to follow the Probate Court's declaratory judgment as a legal "error," (R. 13), therefore, is a stretch at best.

But there is a larger point. Even if it were correct that the ALJ had committed an error in accepting the Probate Court's ruling about J.M.'s status under Massachusetts law, that would not provide a basis for the *sua sponte* reopening of the decision by the Appeals Council under the regulation upon which the Appeals Council purported to rely. See 20 C.F.R. § 404.989(a)(3) (authorizing reopening where good cause exists because "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made").

The touchstone of this provision is that an error is clearly apparent from the face of the evidence considered. Such a clear error might be a factual one, such as a reliance on a fact that is completely absent from the evidence record. See, e.g., Zimmermann v. Heckler, 774 F.2d 615, 617 (4th Cir. 1985) (finding clear error where ALJ found that claimant had filed a written application when there was no evidence of a written application). Or it might be a legal one. See, e.g., Munsinger v. Schweiker, 709 F.2d 1212, 1217 (8th Cir. 1983) (holding that clear error by ALJ in applying state law principle rather than federal law to resolve offset issue justified reopening by Appeals Council). For good cause to exist, the error must be a *clear* one, obvious on the face of the record, and an error is clear only if it is not subject to dispute. See Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993) (by definition, error on the face of the evidence does not encompass disputed issues of fact). The Administration's own guidance to its staff is fully consistent with these principles. See SSA Programs Operations Manual System, GN 04010.020, available at http:/policy.ssa.gov/poms.nsf/links/0204010020 (last visited Aug. 11, 2010) ("An error on the face of the evidence exists where it is **absolutely clear** that the determination or

decision was incorrect. That is, based on all the **evidence in the file and** any evidence of record anywhere **in SSA** at the time the determination or decision was made, it is unmistakably certain that the determination of decision was incorrect.") (emphasis in original).

There was no clear error in this sense that justified the Appeals Council's reopening of the ALJ's decision after the expiration of the sixty-day period when the decision could be reopened for any reason. The error that the Appeals Council relied on was that the ALJ improperly accepted as controlling the Probate Court's finding that J.M. was Joshua's child whom it was his intention and wish to support. For the reasons set forth above, it is, at a minimum, fairly debatable whether the ALJ's judgment in this respect was an error at all. It was certainly not one so clear as to invoke the "good cause" provision set forth in 20 C.F.R. §§ 404.988(b) and 404.989(a)(3).

## IV. Conclusion

The Appeals Council exceeded its authority in reopening the case. The defendant's Motion for Order Affirming Decision of the Commissioner (dkt. no. 12) is DENIED, and the plaintiffs' Motion for Finding That Defendant Exceeded Its Authority in Reopening and Reversing Hearing Decision of Administrative Law Judge (dkt. no. 14) is GRANTED.

The Appeals Council decision dated November 7, 2008 is vacated, and the decision of the ALJ dated April 21, 2008 is reinstated as the final decision of the Commissioner.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge